UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA
ex rel. RICK DODGE,

    Plaintiffs,

v.                                             Case No. 8:03-cv-65-T-30TGW

ACS STATE & LOCAL SOLUTIONS,
INC. f/k/a LOCKHEED MARTIN IMS
CORPORATION,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Dispositive Motion to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum of Law in Support (Dkt. 69), Plaintiff/ Relator Rick Dodge's Memorandum of Law in Opposition (Dkt. 74), and Defendant's Reply to Relator's Opposition (Dkt. 77). A hearing was held on the Motion on February 12, 2009. Upon consideration, the Court concludes that Defendant's motion should be granted.

### Background

Defendant's predecessor, Lockheed Martin IMS Corporation ("Lockheed"), worked with Worknet Pinellas, Pinellas Workforce Development Board, and Pinellas Wages Coalition assisting workers in finding employment in the Pinellas County area under programs funded by the United States Department of Labor ("DOL") and Department of

Health and Human Services ("DHHS") (Dkt. 1 ¶ 16.) In July 2000, Relator Rick Dodge ("Dodge") alleges that he began to gather information about clients that Defendant assisted under the program. As an assistant County Administrator for Pinellas County, Dodge asserts that he requested a full financial and performance audit of Lockheed. *Id.* ¶ 22.

On January 14, 2003, Dodge initiated this cause of action by filing his complaint under seal pursuant to the False Claims Act ("FCA" or "the Act"), 31 U.S.C. § 3729, et seq., asserting, *inter alia*, that Defendant submitted false claims for the payment of money to the government of the United States (Dkt. 1 ¶ 27). Specifically, Dodge contends that Defendant falsified contract dates and placement dates for clients and misrepresented the services it provided under its contracts with the DOL and the DHHS. *Id.* ¶ 24.

The Government declined to intervene in the matter, and the Court ordered the Clerk to unseal the complaint on December 7, 2007 (Dkt. 15). The original complaint was dismissed without prejudice on July 3, 2008, upon a Motion for Judgment on the Pleadings for failure to plead fraud with particularity. Defendant now moves to dismiss the Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Defendant argues that Dodge does not qualify as a proper *qui tam* plaintiff under the terms of the FCA, 31 U.S.C. §3730(e)(4) because the Amended Complaint is based on publicly disclosed allegations and Dodge is not the original source of the information on which this action is based.

**Discussion**

Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). "Facial attacks" on the complaint "require the court to merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." *Id.* at 1529. "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

These two forms of attack differ substantially. "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion - the court must consider the allegations of the complaint to be true." *Id.* at 1529. "But when the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. At issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Here, Defendant's argument that the Amended Complaint is based on publicly disclosed allegations and Dodge is not the original source of the information on which those

allegations are based presents a factual challenge to the court's jurisdiction. The Court will, therefore, consider the evidence presented along with the motion and response.

The FCA specifically limits the Court's jurisdiction over qui tam actions when the allegations are publicly disclosed unless the relator is the original source of the information. 31 U.S.C. §3730(e)(4)(A). The Act defines original source as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. §3730(e)(4)(B).

The relator bears the burden of proving that the court has jurisdiction over the qui tam action. *U.S. ex rel. Butler v. Magellan Health Services, Inc.*, 74 F.Supp.2d 1201, 1206 (M.D.Fla.,1999). In the Eleventh Circuit, a three part inquiry is used to determine if jurisdiction exits; (1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; and (3) if yes, is the plaintiff an "original source" of that information. *Cooper v. Blue Cross & Blue Shield*, 19 F.3d 562, 565, n. 4 (11th Cir. 1994).

A. Public Disclosure

The first inquiry is whether there has been a public disclosure as defined under the statute. "Under the rough language of the statute, a public disclosure can occur (a) in a criminal, civil or administrative hearing; (b) in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation; or (c) from the news media."

*United States ex rel. Butler v. Magellan Health Servs.*, 74 F. Supp. 2d 1201, 1207 (M.D. Fla. 1999).

The basis of this action, Lockheed's billing practices, were discussed in various local newspaper articles in 2001 and 2002. There is no dispute that these news articles are public disclosures under the FCA, which leads the Court to the next step in the jurisdictional inquiry.

B.   Public Disclosure as Basis of Suit

Once the Court has determined that there has been a public disclosure, the jurisdictional bar applies if the action is "based upon" the publicly disclosed information. *Cooper*, 19 F.3d at 565, n. 4. The Eleventh Circuit has held that "the general definition of 'based upon' is 'supported by.'" *Id*. at 567. Therefore, suits based in any part on publicly disclosed information are barred by the FCA. *Id.* This "based upon" test is a "quick trigger to get to the more exacting original source inquiry.'" *Id.* at 568, n. 10 (*quoting United States ex rel. Precision Co. v. Koch Industries, 971 F.2d 548* (10th Cir. 1992).

Again, there is no dispute that the information disclosed in the articles is the basis of this action. The information in the news articles certainly supports the allegations in the complaint.

C.   Original Source

The final inquiry, and the only one at issue here, is whether Dodge qualifies as an original source. Under the FCA, to qualify as an original source, Dodge must have direct and independent knowledge of the information on which the allegations are based and have

voluntarily provided that information to the Government before filing this action. 31 U.S.C. §3730(e)(4)(B).[1]

1. Direct and Independent Knowledge

a. Guiding Case Law

Because an original source inquiry is so fact sensitive, little direction has been given regarding the definition of the phrase "direct and independent." In *Cooper., supra* at 562, the Eleventh Circuit addressed the question of original source. The relator in *Cooper* had insurance benefits that were administered by Blue Cross and Blue Shield of Florida ("BCBSF"). *Id.* After encountering problems with his own claims processing, the relator began to research and investigate. *Id.* The relator filed his qui tam action after BCBSF refused to correct the problems despite being repeatedly informed of those problems by the relator. *Id.*

Without specifically defining the phrase or articulating standards for addressing the issue, the Court in *Cooper* held that the Relator's knowledge was direct and independent because he "acquired his knowledge of BCBSF's alleged wrongdoing through three years of his own claims processing, research and correspondence..." *Id.* at 568. The Court in *Cooper* further held that it is not necessary for the relator to have all the relevant information to qualify as "independent." *Id.* (*citing United States ex rel. Stinson, Lyons, Gerlin &*

---

[1] Dodge argues that Lockheed hired Theresa "Momma Tee" Lassiter to intimidate and harass him into ceasing his investigation of Lockheed's billing practices and that this is evidence that Dodge is an original source. This argument is without merit. Lockheed's belief regarding Dodge's status is irrelevant because the original source requirement is jurisdictional. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467-468 (2007).

*Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991). The Eleventh Circuit later added that a relator "need not establish herself as *the* original source of the publicly disclosed information but must establish that she is *an* original source of the information in that she had direct and independent knowledge of the information on which she is basing her FCA claim." *Battle v. Bd. of Regents*, 468 F.3d 755, 762 (11th Cir. 2006).

The parties here have cited to two cases outside of this Circuit to assist the Court in its analysis. Dodge points to *United States ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 21 F.Supp.2d 607 (E.D. La. 1998), a district court case from the Fifth Circuit. The co-relators in *Garibaldi*, William Garibaldi and Carlos Samuel, were employees of Defendant Orleans Parish School Board ("School Board"). *Id.* at 610. Garibaldi was Samuel's supervisor in the School Board's audit department. *Id.* Under Garibaldi's supervision, Samuel began an audit of another School Board department. *Id.* at 611. As a result of the audit, Samuel discovered, then informed Garibaldi, that the School Board may have improperly overcharged two federally funded programs. Garibaldi then investigated the data further and prepared an interim audit report. *Id.* Following the interim audit report, the Superintendent, to whom the audit report was made, hired an independent auditor to conduct a new, independent audit. *Id.* Though the independent auditor found no violations, Samuels and Garibaldi filed their qui tam action based on their original allegations. *Id.*

The district court found Garibaldi and Samuels to be proper relators because they were the original source of the information upon which the allegations were founded. *Id.* at 615. The court defined independent information as that which does not "depend or rely on the

public disclosures." *Id.* at 616. Direct information is "first hand knowledge." *Id.* The court further noted that *an* original source need not be the *only* source. *Id.* at 617. Samuel and others in his department discovered the possible fraud. *Id.* Samuel and Garibaldi personally investigated, formed their own conclusions, and were the "moving force" behind the independent audit. *Id.* "They were at the very least partial sources of the information." *Id.*

In contrast to Garibaldi, Defendant directs this Court's attention to *United States ex rel. Fine v. Advanced Services, Inc.*, 99 F.3d 1000 (10th Cir. 1996). The relator Harold Fine was an Assistant Regional Manager at the Office of Inspector General, in the U.S. Department of Energy. *Id.* at 1001-1002. In his position, Fine supervised field auditors in their performance of audits and preparation of audit reports. *Id.* at 1002. After reviewing the audit reports prepared by the field auditors, which identified certain claims as unallowable, Fine re-labeled the claims as false claims rather than merely unallowable. *Id.* at 1007.

The Tenth Circuit Court "construed the term 'original source' and determined that direct knowledge is knowledge gained by the relator's own efforts and not acquired from the labors of others." *Id.* at 1006-1007. Fine argued that he was an original source because the audit occurred at his direction and that he performed his own investigation after he left the Office of the Inspector General. *Id.* The court found, however, that Fine did not qualify as an original source because "his knowledge was secondhand and derivative of the information generated by the auditors who actually performed the audit and uncovered the facts" and that his "'independent investigation appear[ed] to consist of little more than some information

provided to him by an anonymous source." *Id.* at 1007 (*citing United States ex rel. Fine v. MK-Ferguson Co.*, 99 F.3d 1538 (10th Cir. 1996)).

Though these cases appear to be conflicting, each can be distinguished. In *Garibaldi*, the Court held that one need not be the only original source to qualify as an appropriate relator as long as he or she contributed at least some of the information alleged in the initial complaint. The *Fine* court held that a relator must have had some level of actual involvement in the investigation of the allegations. As the *Garibaldi* court pointed out, the distinction between these two cases is that while Fine played no part in the conclusions that the transactions involved were fraudulent, "Garibaldi was instrumental in creating the audit report that revealed the allegations." *Garibaldi*, 21 F. Supp. 2d 607, 616.

## Current Case

It is left to this Court to determine if Dodge's involvement in the investigations of Lockheed was enough for him to qualify as an original source. Fundamentally, this Court must decide if Dodge's actions are more closely analogous to Garibaldi or to Fine. Initially, the Court notes that during the hearing on the pending motion, Dodge's counsel agreed that if a supervisor merely orders an audit and then reviews the findings, the supervisor would not qualify as an original source. However, Dodge's counsel argues that this hypothetical situation does not apply to Dodge because he undertook his own investigation, looked at the evidence, and connected the dots to arrive at the allegations in the complaint.

Dodge claims that he conducted his own investigation of Lockheed which "included, but was not limited to, personally reviewing Defendant's billing invoices; visiting and

observing all of Defendant's One-Stop Centers in Pinellas County; and corresponding directly with Lockheed officials." Dodge Affidavit, Dkt. 74, Ex. 3, ¶5. This conclusory statement is not supported by the record. When asked at the hearing to point to something specific in the record uncovered by Dodge, Dodge's counsel was unable to do so. In addition, attached to the amended complaint are charts representing 28 specific allegedly false claims made by Lockheed. Though Dodge contends that these charts were used by his counsel to summarize information that was already in his possession, Dodge conceded that he had no specific knowledge of the factual basis underlying any of these 28 claims. Dodge Dep. July, 2008, 145: 9-15. In fact, Dodge acknowledged that though these charts "came directly from the invoices," he never saw those invoices. *Id.* at 137: 18-22.

Furthermore, Dodge's counsel iterated at the hearing that one specific action that Dodge undertook as part of his investigation was his correspondence with Camille Brockman, a Project Manager at Lockheed Martin's Pinellas Works program, inquiring about specific employment placements that Lockheed reported they had made. However, in his deposition on July 31, 2008, Dodge stated that his correspondence with Brockman began as a result of a meeting involving both Pinellas County officials and Lockheed representatives, at which Brockman was present. Dodge Dep. July, 2008, 154: 11-15. This meeting took place on June 26, 2000. Dkt. 74, Ex. A at p. 2. Dodge further stated that during and then following the meeting, in a letter dated July 10, 2000, he requested more information regarding Lockheed's reported placements because he "thought that [the high placement number] was great" and he "had a lot of contact with other industries, and [he] was really

thinking who else [he] could bring to the table." Dodge Dep. July, 2008, 154: 20-25 and 155: 1-3. If his correspondence with Brockman began because he was pleased with Lockheed's performance, it begs the question of how it could have been part of an investigation based on any possible suspicions that Lockheed was making false claims.

Dodge also asserts that he was the person who directed that financial and performance audits be conducted; he claims that "as a direct result of [his] efforts, audits regarding Defendant's One-Stop Centers in Pinellas County were performed by [independent auditing company] KPMG and by Pinellas County Consultant Sarah Snyder." Dkt. 74 at 4. In his Amended Complaint, Dodge states that he was convinced to request a financial audit (completed by KPMG) and a performance audit (completed by Snyder) due to Lockheed's "inability to provide appropriate and complete answers to letters written to them on July 10, 2000 and July 11, 2000." Dkt. 56 at ¶18. However, in his deposition taken on April 15, 2004, Dodge was asked when he "became aware that KPMG had been engaged by the County to perform any kind of review of the Lockheed Martin contract." Dodge Dep. April, 2004, 191: 9-12. He responded: "Well, that was by counsel action in June of 2000." *Id.* at 191: 13-14. It is unclear to the Court how Dodge could have requested the KPMG audit based on the lack of information provided by Lockheed before he ever asked for that information. Moreover, Sarah Snyder was hired by the Pinellas County Workforce Development Board, not by Dodge or the departments he supervised. Dodge Dep. July, 2008, 120: 7-10.

In addition to the KPMG audit, Dodge contends that once he received some of the requested information from Lockheed, he ordered Laura Berkowitz, head of the research department of the Pinellas County Office of Economic Development, to conduct an internal investigation of Lockheed's billing practices. Lockheed eventually had provided a list with a sampling of employers with which it had placed participants, which Dodge passed along to Berkowitz. Dodge asked that she verify the information on the list by "do[ing] something that was statistically objective in selecting a sample." Dodge Dep. April, 2004, 210: 13-15. Berkowitz reported to Dodge that she randomly sampled 50 employers from the list of about 1,200. *Id.* at 215: 25-25. She and other staff members in the Office of Economic Development called those 50 employers and, from a script that Berkowitz developed, asked a series of questions, to a representative of each company. *Id.* at 216: 5-7. Berkowitz wrote a report detailing the findings of her investigation and gave that report to Dodge. Dodge Dep. July, 2008, 209: 16-18. Beyond that vague directive to conduct an investigation using some kind of objective sample, Dodge had no more input into the investigation. Dodge conducted no interviews himself nor did he come to his own conclusions based on the raw data. Dodge simply used Berkowitz's report as a part of his later report to the Board of County Commissioners. *Id.* at 209: 20-21.

Though Dodge asserts that his allegations are based upon his own labor, everything he points to as evidence fails to support that contention. The record does not disclose any indication of Dodge "connecting the dots" to form the allegations of this action or actually conducting his own investigation, aside from his own conclusory statements. Therefore, it

appears from the record, that Dodge's situation is more closely analogous to the relator in *Fine* in that Dodge based his allegations solely on the results of the labor of others.

### Voluntarily Provided Information to Government

A factual dispute remains regarding whether Dodge voluntarily provided the information to the government before filing his qui tam action. However, the Court need not consider the issue because Dodge fails to satisfy the direct and independent knowledge element of the original source inquiry.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss (Dkt. 69) is **GRANTED**.

2. Plaintiff Rick Dodge's Amended Complaint (Dkt. 56) is **DISMISSED.**

3. All pending motions are denied as moot. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on April 3, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2003\03-CV-65.mtd 12(b)(1).wpd